UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
SARKIS HAGOPIAN,                       )
                                       )
     Plaintiff,                        )
                                       )
          v.                           )    C.A. No. 18-283 WES
                                       )
CITY OF NEWPORT; and                   )
KENNETH M. CONTI,                      )
                                       )
     Defendants.                       )
_____)


**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge

     Defendants moved for partial summary judgment, ECF No. 28,
arguing that Plaintiff's evidence for municipal liability under
Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658
(1978) is insufficient. For the reasons given below, Defendants'
Motion is GRANTED.


I.   BACKGROUND

     Officer Kenneth Conti of the Newport Police Department arrested
Sarkis Hagopian in the early morning hours of May 30, 2015.
Defendants' Statement of Undisputed Facts (D's SUF) 1, ECF 29.
Plaintiff alleges that during the arrest, Officer Conti struck him
in the back of the head with a steel baton, even though he was on
his knees and complying with the officer's commands. See Compl.
¶¶ 39-43, ECF No. 1.  Because the events of the arrest are disputed

and ripe for trial, both Defendants' motion and this Order pertain only to the conduct and liability of the city, acting through the supervisory and disciplinary structures of its police department.[1]

A. Policies

The Newport Police Department maintains policies which regulate both the use of force by its officers and the investigation of

---

[1] Plaintiff argues that even if his claim against the city under 42 U.S.C. § 1983 is rejected, the city may still be liable on remaining counts of his complaint. See Pl.'s Mem. In Supp. of Opp to Summ. J. (Pl.'s Opp.) at 2 n.1, ECF No. 30-1. This question is not formally before the Court, and therefore will be addressed while determining the scope of the trial. Briefly, however, the Court notes that Plaintiff's alternative theories appear unlikely to succeed. This Court has identified no authority in which the Rhode Island Supreme Court has sanctioned a direct cause of action under article 1, section 6 of Rhode Island Constitution analogous to that established in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Instead, the Rhode Island Supreme Court has consistently refused to hold that constitutional provisions create a private cause of action without legislative action. See Doe v. Brown Univ., 253 A.3d 389, 398-401 (R.I. 2021) (anti-discrimination clause of article 1, section 2 of the Rhode Island Constitution does not give rise to private cause of action); Bandoni v. State, 715 A.2d 580, 587-96 (R.I. 1998) (same for article 1, section 23). Similarly, while plaintiff is correct that a city is vicariously liable for intentional torts committed by employees acting within the scope of their employment, acts of police brutality or excessive use of force are generally not considered within the scope of an officer's employment. Cruz v. Town of N. Providence, 833 A.2d 1237, 1240 (R.I. 2003). For this reason, the Rhode Island Supreme Court essentially applies the Monell standard to intentional torts, requiring a showing that an officer's unlawful activity was in furtherance of a policy or custom promulgated by his supervisor or the municipality. Id.

civilian complaints. Pl.'s Statement of Additional Undisputed Facts (Pl.'s SAUF) ¶¶ 1, 5, ECF No. 31. The department's use-of-force policy requires officers to "use only that force that is objectively reasonable." Pl.'s SAUF ¶ 2. "Objectively reasonable" is defined in turn by reference to what a reasonable officer would deem necessary and appropriate in the same situation, especially considering the nature of the crime, whether the subject is an imminent safety threat, and any active resistance or flight by the subject. Pl.'s SAUF ¶ 3.

Newport Police Department's Internal Complaint Review Policy creates two procedural paths for investigating an allegation of misconduct. Pl.'s SAUF ¶ 8, citing Newport Police Department Gen. Order 130.01 (Complaint Review Policy), ECF No. 31-2. Allegations of minor infractions may be investigated by the officer's supervisor; claims of more serious misconduct -- those which could result in discharge, suspension, demotion, or criminal charges – are to be investigated by the Office of Professional Standards (OPS). Id., citing Complaint Review Policy IV.B.5. Among the complaints which require an OPS investigation are those "alleging abuse of authority, including excessive use of force, willful and malicious illegal arrest, unreasonable deprivation of individual rights, conduct or behavior derogatory of a person's race, color, creed, sex, age, religion, national origin, disability, or sexual orientation." PL.'s SAUF ¶ 8, quoting Complaint Review Policy at

3

III.A.   For a complaint to be sustained, the investigation must discover "sufficient facts to clearly prove the allegations." Complaint Review Policy at IV.H.2.d.   The results of all investigations, whether by an officer's immediate supervisor or by OPS, are submitted to the head of OPS, who in turn submits the report to the Chief of Police for approval of the disposition and possible discipline.   Pl.'s SAUF ¶¶ 13, 15.

B. Additional complaints against Officer Conti.

In the three years following Plaintiff's arrest, three other individuals made formal complaints of excessive force against Officer Conti.   Pl.'s SAUF ¶¶ 38, 53, 72.   Plaintiff contends that these complaints, as well as how they were investigated are indicative of the ways in which the department investigates and disciplines its officers generally.   See Pl.'s Opp. to Mot. Summ. J. at 6-8, 15 (Pl.'s Opp.) ECF No. 30-1.

In the first subsequent complaint, Quiara Brooks, alleged that Officer Conti pulled her out of her parked car by the neck of her sweatshirt and threw her to the ground.   Pl.'s SAUF ¶ 38, citing Investigative Report #15-7-IA, ECF No. 31-11 (Brooks IA Report). An OPS officer took up the investigation.   Brooks IA Report 4. When he eventually met with Ms. Brooks, her mother, and her

attorney, she stated she wanted to drop the complaint.[2]  Id.  The
OPS officer did not interview, nor attempt to interview a
percipient civilian witness, but he did interview Officer Conti
and two other officers who were on the scene.  Id. 5-7.  The depth
and adequacy of the investigator's questions for the officers
involved remains disputed.  See Reply to Pl.'s Additional Facts
¶¶ 42-43, ECF No. 32.  The investigation concluded there was not
sufficient evidence to clearly prove the allegations, and the
complaint was therefore "not sustained."  Brooks IA Report 8-9.

In the second excessive force complaint, Christopher Pereira
alleged that Officer Conti and another officer pulled him off his
bike for riding the wrong way on a one-way street, assaulted him,
and deployed a taser on his genitals.  Pl.'s SAUF ¶ 53, citing
Pereira Report, ECF No. 31-12.  This complaint was not referred to
OPS for investigation, but rather to Officer Conti's supervisor.
Pl.'s SAUF ¶ 55.  The supervising officer spoke with Officer Conti
and the other officer involvedand recorded their version of events:
that Pereira resisted arrest forcefully and kicked one of the

---

[2]  According to the investigative report, Brooks' attorney
made an offer to the city solicitor that she would drop the
internal affairs complaint in exchange for dismissal of the
criminal charges.  See Investigative Report #15-7-IA 5, ECF No.
31-11 (Brooks IA Report).  While it's unclear if this formed the
basis of an agreement with the city solicitor, the investigating
officer appears to have recognized the impropriety of this
arrangement and represented that his duty to investigate was
independent of the criminal case against Ms. Brooks.  Id.

officers twice in the groin. Pereira Report 8. When the
investigating supervisor called Pereira to discuss the complaint,
Pereira expressed hesitation about speaking to him without his
attorney present. Id. He also maintained that he did not resist
arrest. Id. When the investigating officer "advised" Pereira
that officers on the scene told a different story, Pereira stated
that all further questions would need to be directed to his
attorney. Id. The investigating officer told Pereira he would
not be contacting his attorney and closed the case as "not
sustained." Id.

Finally, in the third subsequent complaint of excessive force
against Officer Conti, Danelis Sanchez-Rivera alleged that officer
Conti aggressively pushed her to the ground while another officer
took her baby out of her arms. Pl.'s SAUF ¶¶ 71-74, citing
Investigative Report #17-4-IA, ECF No. 31-13 (Sanchez-Rivera
Report). She claims he pushed her even after he was told by others
on the scene that she was pregnant. Sanchez-Rivera Report 9. An
officer from OPS began investigating the complaint by reviewing
video of her booking and video from a body worn camera on the
scene. The latter did not capture the arrest because it had been
turned off and not reactivated prior to Sanchez-Rivera's arrival.
Id. at 4. When the officer attempted to speak with Sanchez-Rivera,
she eventually told him that she would not speak with him on the
advice of her attorney. Id. He made multiple phone calls to

percipient witnesses and left business cards at the addresses listed on the complaint, but none of the witnesses responded.  Id. Pointing to a lack of witness participation, the investigating officer then closed the complaint as "not sustained." Id.

C. Statistical evidence

In addition to these complaints and the way they were investigated, Plaintiff seeks to support his case against the city by pointing to statistics about internal affairs investigations. Pl.'s Opp at 11-12.  These aggregate numbers do not distinguish by type or seriousness of the allegation.  Pl.'s SAUF ¶ 20.  They do, however, indicate the number of complaints which were investigated by OPS as opposed to supervising officers.  Id. at ¶ 19.  The relevant data are summarized as follows:

| Year | Total Investigations | By OPS | By supervisors | Sustained |
|------|---------------------|--------|----------------|-----------|
| 2011 | 12 | 12 | 0 | 9 |
| 2012 | 28 | 16 | 12 | 6 |
| 2013 | 36 | 22 | 14 | 10 |
| 2014 | 34 | 18 | 16 | 4 |
| 2015 | 18 | 7 | 11 | 6 |

II.  DISCUSSION

Plaintiff alleges Newport is liable because it "failed to properly select, train,[3] instruct, supervise and/or discipline its police officers." See Compl. ¶ 75.  More specifically, Plaintiff claims that "material systemic deficiencies in the investigation and determination of complaints of officer misconduct by the Defendant Newport's Police Department" prevented effective discipline and led directly to Officer's Conti's actions in this case.  See Pl.'s Opp. at 2.

A. Legal Standards

To succeed at summary judgment, Defendants must show that "there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views "the facts in the light most favorable to the nonmoving part[y]."  Pippin v. Blvd. Motel Corp., 835 F.3d 180, 181 (1st Cir. 2016) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157–58 (1st Cir. 2016)).  However, "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (quoting Pina v. Children's

---

[3]  While Plaintiff pleaded a failure-to-train theory, Compl. ¶ 75, he has failed to develop that line of argument, both in the evidence before the Court and in the summary judgment briefing. He cannot, therefore, sustain a claim on that theory.

8

Place, 740 F.3d 785, 795 (1st Cir. 2014)).  A "complete failure of proof concerning an essential element of the nonmoving party's case" is fatal to that claim at the summary judgment stage. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Under 42 U.S.C. § 1983, a municipality is not vicariously liable for constitutional violations committed by its employees on a on a theory of respondeat superior, i.e., solely because it employs a tortfeasor.  Monell v. N.Y. City Dept. of Social Servs., 436 U.S. 658, 690-92 (1978).  Rather, a municipality is liable for harms caused when its employees' "'execution of a government's policy or custom ... inflicts the injury' and is the 'moving force' behind the constitutional violation."  Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st Cir. 2005) (quoting Monell, 436 U.S. at 694).  A plaintiff must therefore "demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm."  Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (citation omitted).

Policies and customs "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 563 U.S. 51, 61 (2011).  Where a municipal custom or practice is at issue, it must be so "well settled and widespread that the policymaking officials of the

municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Bordanaro</u> v. <u>McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989).

Where, as here, the plaintiff's claims are predicated on a custom or policy of municipal inaction -- a failure to train, discipline, or investigate allegations of misconduct -- courts must ascertain whether that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989); <u>see</u> <u>DiRico v. City of Quincy</u>, 404 F.3d 464, 469 (1st Cir. 2005) (analyzing alleged failure to discipline, train, and supervise under deliberate indifference standard); <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 972 (3d Cir. 1996) (applying deliberate indifference standard to police department's failure to investigate and discipline).

For municipal inaction to amount to deliberate indifference, a plaintiff must show: "(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists." <u>Parker v. Landry</u>, 935 F.3d 9, 15 (1st Cir. 2019) (quoting <u>Guadalupe-Báez</u>, 819 F.3d at 515). The failure to discipline must be so pervasive as to allow an "inference of supervisory encouragement, condonation or even acquiescence." <u>Santiago</u>, 891 F.2d at 382 (citation and

quotation omitted).  Causation must be such that the municipality's "deliberate indifference [leads] in a straight line to the putative constitutional violation." Parker, 935 F.3d at 15

Generally, to make out a claim of municipal liability on a failure-to-investigate or failure-to-discipline theory, a plaintiff will present a series of similar prior constitutional violations which were ignored long after city officials and supervisors were on notice of their need to act.  Gonsalves v. Clements, No. CV 21-021 WES, 2021 WL 3471335, at *2 (D.R.I. Aug. 6, 2021) ("Generally, [deliberate indifference] requires a pattern of prior similar constitutional violations") (citing Connick, 563 U.S. at 62 and Saldivar v. Racine, 818 F.3d 14, 18-19 (1st Cir. 2016)).  See, e.g., Beck, 89 F.3d at 969-70 (five other civilian complaints alleging excessive use-of-force by officer who assaulted plaintiff sufficient); Cooper v. City of Jersey City, No. CV189200KMMAH, 2021 WL 1589348, at *6 (D.N.J. Apr. 22, 2021) (evidence of defective investigatory procedures sufficient where plaintiff showed that only one out of one hundred and sixty-six excessive force complaints were sustained over previous five year period, including seven similar accusations against officer involved); Cordial v. Atl. City, No. 1:11-CV-01457 RMB, 2014 WL 1095584, at *5-6 (D.N.J. Mar. 19, 2014)(nine prior complaints alleging excessive force against two officers that assaulted plaintiff sufficient); Garcia v. City of Newark, CA No. 08-1725

(SRC), 2011 WL 689616, at *4 (D.N.J. Feb. 16, 2011) (collective 55 complaints against six of the officers involved in arrest sufficient).   "As with many issues, the question is to a considerable extent one of degree: while a single accusation of excessive force is not enough [to impose municipal liability], at some point as the accusations and claims begin to pile up, a critical mass may be reached requiring an affirmative response from supervisors." Douglas v. City of Springfield, No. CV 14-30210-MAP, 2017 WL 123422, at *9 (D. Mass. Jan. 12, 2017) (quoting Cox v. Murphy, No. 12-11817-FDS, 2016 WL 4009978, at *10 (D. Mass. Feb. 12, 2016)).

B. Newport's Liability

As noted, both establishing the existence of a municipal custom and showing that the custom amounted to deliberate indifference to the rights of the policed populace require facts establishing that city officials were on notice of their need to end the unconstitutional practice. See Parker, 935 F.3d at 15; Bordanaro, 871 F.2d at 1156.  It is a problem then for Plaintiff that every additional accusation of excessive force against Officer Conti occurred after the arrest at issue in this case, and not before. While the allegations in those subsequent complaints are concerning, even if the Court takes every word of them to be true, they cannot have given the city notice of a failure to discipline and investigate Officer Conti at the time of Plaintiff's arrest.

12

Similarly, Plaintiff has not presented evidence describing any incident in which any other Newport officer was even accused of using excessive force prior to the events in this case, much less an instance where a feckless or half-hearted investigation precluded proper discipline.  There may be difficult questions raised in other cases as to just how many prior complaints and questionable investigations suffice to give a municipality notice that an officer systematically uses excessive force, but that number is not zero.  See Cox, 2016 WL 4009978, at *8.  The "straight line" of causation between the city's alleged failure to act and the specific constitutional violation alleged, like all causal relationships, must run forward in time.

Plaintiff is left to rely on a subtler inference.  Namely, that these three subsequent complaints are probative as to how the Newport Police Department deals with excessive force claims generally, and by implication how it dealt with them before Plaintiff's arrest.  Specifically, Plaintiff claims the Newport investigatory process is flawed by pervasive customs of: (1) reflexively believing an officer's account over the complainant's; (2) not taking prior accusations into account when considering a new compliant; and (3) failing to follow its own procedures by allowing supervising officers to conduct investigations into serious misconduct.  See Pl.'s Opp. at 11-17.

13

In support of his contention that these alleged failings were so widespread as to practically have the force of law at the time of his arrest, Plaintiff points to deficiencies in the three investigations described, as well as testimony from two officers who could not remember an excessive force complaint being sustained in the years immediately prior to the events of this case. Id. at 11. He also relies on statistics and deposition testimony which show an increasing number of complaints referred to supervisors for investigation, as opposed to OPS. Id. at 11-13.

Plaintiff is correct that the purported flaws he identifies are, in theory, proper considerations in evaluating the constitutional adequacy of an investigatory process. See, e.g., Merman v. City of Camden, 824 F. Supp. 2d 581, 591-92 (D.N.J. 2010). And of course, if Officer Conti believed that he would be protected by a toothless and shallow investigatory process, he might conclude he could act with impunity or that the city tacitly condoned unconstitutional tactics, despite written policies to the contrary.

Plaintiff is incorrect, however, that this evidence is sufficient to establish a widespread, pervasive practice or custom of properly investigating civilian complaints, even taking all reasonable inferences in his favor. See Barker v. City of Bos., 795 F. Supp. 2d 117, 124 (D. Mass. 2011) (three prior complaints

of excessive force which did not necessarily show erroneous outcomes plus two commissioned reports identifying deficiencies in internal affairs process insufficient to support municipal liability).  Even though some of the investigatory problems that Plaintiff identified appear to have occurred in one or more of the three investigations described, no reasonable jury could conclude from these examples alone that these deficiencies were "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 60-61.  That conclusion requires precisely the unsupported speculation that summary judgment forbids.

   This is so even recognizing the evident failings in the investigations presented.  The Periera complaint is especially concerning.  One would hope that when an incident begins with a minor bicycle traffic violation and ends with an individual having a taser deployed on his genitals, the city would have more questions.  It was inappropriate by Newport's own standards for the incident to be investigated by a supervisor instead of OPS, and inappropriate for that officer to refuse to speak with the complainant's attorney or to telegraph so clearly to the complainant that his account would not be believed.  Similarly, the investigating officer in the Brooks complaint clearly should have attempted to contact the civilian percipient witness.

But these errors and inadequacies standing alone do not establish a municipal custom, nor give obvious notice to a city official that the investigative process was constitutionally deficient.  Indeed, the Sanchez-Rivera complaint shows much more diligent attempts to interview percipient witnesses and Plaintiff's own statistics show that more than a quarter of all investigations between 2011 and 2015 sustained the underlying allegations.[4]

Because Plaintiff's evidence of an unconstitutional practice or custom is insufficient as a matter of law, the Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  October 12, 2021

s

---

[4] Out of 128 total complaints in that period, 35 were sustained.  The relevance of this number is limited by the fact that the statistics do not distinguish by type or severity of complaint, and therefore do reflect the number or dispositions of excessive force complaints.